**Dated: December 10, 2021**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| White Star Petroleum Holdings, LLC, | ) | Case No. 19-12521-JDL |
| *et al.*, | ) | Ch.11 |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| | ) | |

_____

| | | |
|---|---|---|
| | ) | |
| White Star Petroleum Holdings, LLC | ) | |
| Litigation Trust, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 21-1039-JDL |
| | ) | |
| Enlink Oklahoma Gas Processing, LP | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION TO THE DISTRICT
## COURT TO DENY MOTION TO WITHDRAW THE
## REFERENCE AND DEMAND FOR JURY TRIAL[1]

_____

[1] Pursuant to 28 U.S.C. § 157(d), Local Rule LCvR 81.4(5), and Fed.R.Bankr.P. Rule 5011(a).

## I. Introduction

The Defendant's *Motion to Withdraw the Reference and Demand for Jury Trial*, based upon *Stern v. Marshall*,[2] argues (1) that the Bankruptcy Court does not have the constitutional authority to enter final orders and judgment on the Plaintiff's claims in this adversary proceeding; (2) Defendant does not consent to Bankruptcy Court's authority to do so; (3) it has made a demand for jury trial which the Bankruptcy Court cannot conduct; and (4) the referral of this action to the Bankruptcy Court should therefore be withdrawn and the action moved to the District Court. In response, the Plaintiff contends that *Stern* does not invalidate the Bankruptcy Court's authority to adjudicate Plaintiff's fraudulent transfer and preferential claims, and, in any event, Defendant submitted to the jurisdiction of the Bankruptcy Court by filing its Proof of Claim. Alternatively, Plaintiff requests that the Bankruptcy Court continue exercising jurisdiction for all pretrial matters, and that the reference only be withdrawn upon certification by the Bankruptcy Court that the parties are ready for trial.

Before the Court for consideration are Defendant Enlink Oklahoma Gas Processing, LP's ("Enlink") *Motion to Withdraw Reference, Demand for Jury Trial* [Adv. Doc. 24]; *Plaintiff's Response and Objection to Motion to Withdraw the Reference* [Adv. Doc. 25] filed by White Star Petroleum Holdings, LLC Litigation Trust ("The Trust") and Enlink's *Reply in Support of Motion to Withdraw the Reference* [Adv. Doc. 26].

---

[2] 564 U.S. 462, 131 S.Ct. 2594 (2011) (hereinafter, if not cited in full, referred to as "*Stern*").

Pursuant to Fed.R.Bankr.P. 7052 and 9014,[3] the Court makes the following Findings of Fact and Conclusions of Law with regard to its Report and Recommendation to the District Court to deny the *Motion to Withdraw the Reference and Demand for Jury Trial.*

## II. Procedural Background

1. On May 24, 2019, certain of White Star's unpaid vendors filed an involuntary bankruptcy petition against White Star Petroleum, LLC in this Court.[4]  On May 28, 2019, White Star and all its affiliates filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.  On June 20, 2019, the White Star bankruptcy cases in Delaware were transferred to this Court.  On July 3, 2019, White Star's voluntary bankruptcy cases were consolidated into the involuntary case for White Star that was filed on May 24, 2019.[5]

2. On August 20, 2019, Enlink filed its Proofs of Claim ("POF") in each of the cases of White Star and its affiliates for an unsecured claim in the amount of $58,382,733.56. [Enlink POC; Adv. Doc. 25-1]. The POF is based upon the Term Loan Credit Agreement and the amendments thereto, as more specifically discussed below.

3. On September 30, 2019, the Court approved the sale of substantially all of White Star's assets to Contango Oil & Gas Company ("Contango") for $132.5 million, free and

---

[3]  All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure or to the Federal Rules of Civil Procedure made applicable to bankruptcy proceedings, unless otherwise indicated.

[4] *Involuntary Petition* filed in the Western District of Oklahoma, Case No. 19-12145, Doc. 1.

[5] *Stipulation and Agreed Order Granting Motion to Consolidate*, Case No. 19-12145, Doc. 190; consolidating case with Case No. 19-12524 and jointly administered with lead Case No. 19-12521.

clear of liens, claims, and encumbrances pursuant to 11 U.S.C. § 363(f).[6]

4. A Litigation Trust Agreement ("Trust Agreement") was introduced with the filing of White Star's *Notice of Filing of Plan Supplement* [Doc. 1093]. It was provided for in the *Amended Joint Chapter 11 Plan of Liquidation* of White Star Petroleum Holdings, LLC and its Debtor Affiliates. [Doc. 1123, Section 5.4]. It was approved by the Court's *Findings of Fact, Conclusions of Law and Order Confirming the Joint Chapter 11 Plan of Liquidation of White Star Petroleum Holdings, LLC and Its Debtor Affiliates* entered on April 16, 2020, ("Confirmation Order") [Doc. 1152, Section II, (N) ¶ 88, "Approval of Litigation Trust and Vesting of the Assets in the Litigation Trust"].

5. Under the Trust Agreement, the Trustee is empowered to "pursue, investigate, institute, file, prosecute, enforce, abandon, settle, compromise, release or withdraw any and all Preserved Potential Claims in any court" which had been assigned to the Trust by the White Star Debtors [Doc. 1093, Section 3.03(f)]. The Trust Agreement specifically included amongst the "Preserved Potential Claims" which the Trustee could pursue were claims against Enlink: "Any Claim or Cause of Action related to, or in connection with, the Debtors amendment of its agreements with Enlink Oklahoma Gas Processing, LP ("Enlink"), including the May 19, 2018, amendment to the gas gathering processing agreement with Enlink and other transactions related thereto as described in ¶ 42 of the Zanotti Declaration."[7] [Doc. 1093, Ex. 3, pg. 54].

---

[6] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

[7] *Declaration of Jeffrey J. Zanotti in Support of Debtors' Chapter 11 Petitions and First Day Pleadings filed in the White Star Bankruptcy.* [Doc. 2, pgs 16-17].

4

6. On May 19, 2021, the Trustee filed his *Amended Complaint for Avoidance Actions and Claim Objections (*"Amended Complaint") [Adv. Doc. 3]. The Amended Complaint seeks to avoid transfers made under a Term Loan Credit Agreement (the "Loan Agreement") executed on May 9, 2018, and amendments thereto, as well as under an Overriding Royalty Interest Assignment ("ORRI Assignment") that White Star was required to deliver as a condition precedent to the Loan Agreement. Under the Loan Agreement and related documents, including an Amended Gas Gathering Agreement, under which White Star agreed to: (1) an up-front $19.5 million cash payment under the Loan Agreement, (2) a $58 million secured note under the Loan Agreement, (3) an overriding royalty interest valued at $3.8 million, (4) a security interest in the assets of the White Star and its affiliates and (5) guarantees of the White Star affiliates that had not previously been obligated under a 2014 Gas Gathering and Processing Agreement. The Trustee asserts that these various agreements, executed when White Star was deeply insolvent and on the verge of bankruptcy, "locked up key White Star assets, depleted White Star's cash reserve, and worsened White Star's balance sheet by adding $58 million as a non-contingent debt obligation." [Adv. Doc. 3, pg.8, ¶ 20].

7. The Trustee's Amended Complaint asserts eight (8) Claims for Relief. It is not necessary for the determination of the issue of withdrawal of the reference presently before the Court to set forth in detail the factual allegations underlying each of those Claims for Relief. Suffice it to say, that the Amended Complaint asserts: (1) four (4) Claims for Relief that execution of the Loan Agreement and ORRI Assignment, and amendments, are avoidable as either actually or constructively fraudulent transfers under §§ 544, 548, 550

and 551 of the Bankruptcy Code and § 116(A)(1) and (2) of the Oklahoma Uniform Fraudulent Transfer Act (OUFTA), Title 24 O.S. § 112 *et seq.*; (2) a Claim for Relief to recover as preferential transfers under § 547 approximately $85,000.00 in payments made by White Star to Enlink within 90 days next preceding the filing of bankruptcy; and (3) a Claim Objection under § 502(d) and (j) for disallowance of all claims which Enlink and/or its assignee has filed until such time as Enlink has paid to the Debtors an amount equal to the aggregate amount of the avoidable transfers.

### III. Jurisdiction and Authority

This Court has jurisdiction over this adversary pursuant to 28 U.S.C. § 1334(b) and § 157(a). Bankruptcy judges are permitted to hear, determine and enter appropriate orders and judgments in "core" proceedings. 28 U.S.C. § 157(b)(1). Statutorily, the claims asserted in the Amended Complaint to avoid fraudulent conveyances, preferential payments and an objection to claim are core pursuant to 28 U.S.C. § 157(b)(1) and (2)(B), (F) and (H). As will be discussed below, in the last decade decisions by the United States Supreme Court determined that Article III of the Constitution does not permit a bankruptcy court to enter a final judgment on certain claims despite Congress's designation of such claims as "core" in the Bankruptcy Code. *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594 (2011) ("*Stern*"); *Executive Benefits Ins. Agency v. Arkison,* 573 U.S. 25, 134 S. Ct. 2165 (2014).

*Stern* held that there are certain claims (in the case of *Stern*, a state court counterclaim sounding in tort) which, although designated as "core," the Bankruptcy Court has no authority to enter a final order or judgment (so-called "*Stern* claims"). *Stern* claims

are regarded as giving the bankruptcy court only "related to" (non-core) jurisdiction, requiring the bankruptcy court to submit proposed findings of fact and conclusions of law to the District Court.  The District Court is then to review *de novo* the proposed findings and conclusions before entering final judgment. 11 U.S.C. § 157(c)(1); Local Rule LCvR. 81.4.  Enlink asserts that the Trustee's claims of fraudulent and preferential transfers are constitutional non-core "*Stern* claims" over which this Court does not have jurisdiction to enter a final order.

### IV. Discussion

#### A.  Whether the Trustee's Claims are "*Stern* Claims" Over Which the Bankruptcy Court Does Not Have Constitutional Power to Enter a Final Judgment.

While S*tern* wasn't presented with, and didn't find, whether fraudulent transfers or preference claims constituted "private rights" which can only be decided by an Article III judge, the opinion in arguments, observations and miscellaneous *dicta* have lent support for the conclusion that fraudulent transfers are private right claims.  *Stern* made repeated references to *Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782 (1989), which held that fraudulent transfer actions brought by a bankruptcy trustee "are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res" and "therefore appear matters of private rather than public right." *Id.* at 56.  The *Stern* Court described *Granfinanciera* as holding that "Congress could not constitutionally assign resolution of the fraudulent conveyance action to a non-Article III court." *Stern*, 564 U.S. at 492 n.7.  Yet

*Stern* was not deciding a fraudulent transfer action, and the opinion repeatedly emphasized that its holding was a "narrow" one, and that the Court did "not think the removal of counterclaims such as Vicki's from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute." *Stern*, 564 U.S. at 502. Obviously, if fraudulent transfer and preference actions were taken out of Bankruptcy Court jurisdiction there would be a sea-change in the division of labor under 28 U.S.C. § 157(b)(1). *Stern's* exact holding was that despite the statutory definition of core proceeding, a bankruptcy court lacks "the constitutional authority to enter a final judgment *on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim*." *Id.* at 503. (Emphasis added).

Much has been written and discussed about the scope and implications of *Stern*. Courts are split on whether bankruptcy courts still have constitutional authority to enter final judgments on fraudulent transfer actions brought under §§ 544 and 548.[8] See e.g., *Gibson v. Tucker (In re G & S Livestock Co.*), 478 B.R. 906, 916 (S.D. Ind. 2012) (finding that "the Bankruptcy Court lacked the constitutional authority to enter final judgments on the Trustee's fraudulent conveyance claim"); *Rosenberg v. Bookstein*, 479 B.R. 584, 588-89 (D. Nev. 2012) (noting that to hold the bankruptcy court still has the ability to enter final judgment on fraudulent transfer claim would require a court to "ignore the logic of *Stern* as well as the Supreme Court's decision in *Granfinanciera*" and "a plain reading of the *Stern* decision in light of *Granfinanciera* reveals fraudulent conveyance claims must be decided

---

[8] In discussing the jurisprudence on *Stern* claims and the public rights doctrine, now Justice Neil Gorsuch observed that it "has something of a 'potluck quality' to it" and "even today, it's pretty hard to say what the upshot is." *In re Renewable Energy*, 792 F.3d 1274, 1278 (10th Cir. 2015).

by an Article III court."); *Kirschner v. Agoglia*, 476 B.R. 75, 80 n.3 (S.D. N.Y. 2012) (reaching the ineluctable conclusion the bankruptcy courts can no longer enter final judgments on fraudulent transfer actions because *Stern* relied upon *Granfianciera* and "to now conclude that the very claim presented in *Granfinanciera* - a fraudulent conveyance claim - is a 'public rights' claim would be totally at odds with the *Stern* Court's analogy to *Granfinanciera*."); *Heller Ehrman LLP v. Arnold & Porter, LLP (In re Heller Ehrman LLP)*, 464 B.R. 348, 354 (N.D. Cal. 2011).[9]

The majority of cases, however, hold that fraudulent transfer actions are not *Stern* claims. See, e.g. *In re Direct Response Media, Inc.*, 466 B.R. 626, 646 (Bankr. D. Del. 2012) ("The preference and fraudulent transfer claims arise both under Title 11 and in a case under Title 11 and are by definition 'core' issues under § 157(b)(2)(F) & (H) for which a bankruptcy court has authority to enter final adjudications."); *In re Agriprocessors, Inc.*, 479 B.R. 835 (Bankr. N.D. Iowa 2012); *Miller v. Greenwich Capital Financial Products, Inc. (In re American Business Financial Services, Inc*.), 457 B.R. 314, 319-20 (Bankr. Del. 2011) (holding that the bankruptcy court has power after *Stern* to issue a final judgment on fraudulent transfer claim); *In re Refco Inc.*, 461 B.R. 181, 185-86 (Bankr. S.D. N.Y. 2011) (concluding that "*Stern* does not preclude the Court's issuance of final judgment on

---

[9] Some courts have cited *Executive Benefits Insurance Agency v. Arkison*, 573 U.S. 25, 134 S.Ct. 2165 (2014) as holding that fraudulent transfer actions are "*Stern* claims." That was not the Supreme Court's holding. It "assume[d] without deciding," 573 U.S. at 37,134 S.Ct. at 2174, that bankruptcy courts could not finally adjudicate fraudulent transfer claims under Article III-a proposition that no party contested before the Court. The Court could have expressly stated that fraudulent transfer actions were *Stern* claims without disturbing *Arkison's* ultimate holding: that bankruptcy courts may enter findings of fact and conclusions of law for *de novo* review by the District Court in all non-core matters, including *Stern* claims that had been improperly designated as core. Also, unlike the case before this Court, in *Arkison* the fraudulent transfer action was against a non-creditor.

the Trustee's complaint."); *In re Safety Harbor Resort and Spa*, 456 B.R. 703 (Bankr. M.D. Fla. 2011).

There is no binding authority in the Tenth Circuit determining the extent of the bankruptcy court's authority to enter final judgment in a fraudulent transfer case. *In re Ballway*, 2012 WL 359509, at *2 (Bankr. D. Kan. 2012). The majority of courts within the Circuit, however, have concluded that the Supreme Court should be taken at its word – that the holding in *Stern* is very "narrow" in spite of some language in the analysis that could be given a broader application or interpretation. *Miller v. Enviro Care, Inc. (In re Rock Structures Excavating, Inc.)*, 2013 WL 1284969 (D. Utah 2013); *Wadsworth v. Baker (In re DeLafuente)*, 2012 WL 1535848, at *2-3 (Bankr. D. Colo.2012); *Steinle v. Trico Real Estate, L.P. (In re CCI Funding I, LLC),* 2012 WL 3421173 (Bankr. D. Colo. 2012).[10]

This Court chooses to adopt the narrow view of *Stern* as stated by the court in *In re Rock Structures Excavating, Inc.* supra.:

> This Court concludes, based on the clear language of *Stern*, that "*Stern* and the Constitution do not preclude the bankruptcy court from entering final judgment in a fraudulent conveyance action." *In re Cifelli v. Mursalim (In re Miles)*, 481 B.R. 832, 838 (Bankr. N.D. Ga. 2012). Therefore, since the instant Adversary Proceeding contains no counterclaims based on state law, by the narrow reading this Court adopts today, *Stern* is not applicable to this matter. Based on this conclusion, it follows

---

[10] Both parties discuss *Loveridge v. Hall (In re Renewable Energy Development Court ("In re REDC")*, 792 F.3d 1274 (10th Cir. 2015). They agree with Judge Gorsuch's statement that, "So whatever else you might say in the midst of this still-very-much-ongoing battle over bankruptcy and public rights doctrine (under *Stern),* you can say this much: cases properly in federal court but arising under state law and not necessarily resolvable in the claims allowance process trigger Article III's protections." Although a Court of Appeals decision, *REDC* isn't binding authority because its factual setting is totally different than the one at issue here. In fact, Judge Gorsuch in his customarily colorful language notes that, "This case has but little to do with bankruptcy. Neither the debtor nor the creditors, not even the bankruptcy trustee, are parties to it." 792 F.3d at 1276.

> that bankruptcy court has jurisdiction to enter final orders on all determined core claims–including fraudulent transfer claims under § 157(b)(2)(H)–and proposed findings of fact and conclusions of law for all determined non-core claims.

2013 WL 1284969, at *5.[11]

While this Court finds that the Trustee's fraudulent transfer claims under § 548 are not *Stern* claims, the Trustee also asserts fraudulent transfer claims under the OUFTA. 24 O.S. § 116 and 117. The assertion of the OUFTA claims, argues Enlink, are "state law claims constitutionally indistinguishable from the non-core claims in *Stern* and *Granfinanciera*." The Court does not agree.

First, as has been discussed, there is a large difference between fraudulent transfer actions brought to recover estate property and the private state-law-created tortious interference with contract counterclaim in *Stern*. Second, the majority of courts have concluded that while a claim in state law (i.e. the OUFTA claims here), such claim becomes a federal claim under § 544 upon the commencement of the bankruptcy case, thereby invoking the substantive right under title 11 and constituting a core claim. See e.g., *In re Appalachian Fuels, LLC*, 472 B.R. 731, 739 (E.D. Ky. 2012) ("[R]egardless of whether the fraudulent transfer claims are brought under § 548 or § 544, they are considered core claims."); *In re Bliss Technologies Inc.*, 307 B.R. 598, 600 (Bankr. E.D. Mich. 2004) (concluding that the plaintiff's cause of action based upon fraudulent transfer under state law and § 544(b)(1) is a core proceeding); *In re DBSI, Inc.*, 466 B.R. 664, 665 (Bankr. D.

---

[11] Enlink does not argue that the Trustee's state-law fraudulent transfer claim under the OUFTA (Count III) require this Court to withdraw the reference even if its Bankruptcy Code fraudulent transfer claims do not. Enlink argues only that fraudulent transfer claims, of whatever variety, are *Stern* claims that must be tried to a jury as it so demands and has not consented to bankruptcy jurisdiction.

Del. 2012) ("Since the Supreme Court's ruling in *Stern v. Marshall*, there has been considerable debate among the courts as to whether a § 544(b)(1) cause of action is a core proceeding.  I am persuaded by the analysis of the *Stern* decision undertaken by the Court in *In re Refco Inc.*, 2011 WL 5974532 (Bankr. S.D. N.Y. 2011) that it is and I therefore determine that 11 U.S.C. §§ 544(b)(1) counts are core proceedings.").

### B. Whether the Bankruptcy Court Has Constitutional Power to Enter a Final Judgment on the Trustee's Avoidance Claims Where Enlink Has Filed a Proof of Claim.

Unlike the fraudulent conveyance and preferential transfer actions in *Granfinanciera* discussed in *Stern* and the preference action in *Arkison,* the matter before this Court involves such claims against a creditor who *has filed a proof of claim against the estate and* the fraudulent conveyance claim is the basis of the Trustee's objection to that claim in Count VIII of the Amended Complaint. (Emphasis added).

"[B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S.Ct. 330, 331 (1990). *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467 (1966); *In re Hensley*, 356 B.R. 68, 74 (Bankr. D. Kan. 2006).  But simply filing a proof of claim does not in and of itself in all cases submit the creditor to the Bankruptcy Court's constitutional authority to enter a final judgment. *Cf. Stewart v. JPMorgan Chase Bank, N.A. (In re Stewart)*, 473 B.R 612, 627 (Bankr. W.D. Pa. 2012) (deciding that "the *Stern* opinion actually seeks to correct the over-broad reading of its prior decisions in *Katchen* and *Langenkamp* that the Debtors seek to employ in the instant matter" and "[j]ust because JPMorgan has filed a proof of claim in the

12

Debtors' bankruptcy does not mean it has consented to resolution of all matters between itself and the Debtors in this Court.").

*Stern* instructs that the Bankruptcy Court has jurisdiction to issue final judgments on claims that "stems from the bankruptcy itself and would *necessarily* be resolved in the claims allowance process." *Stern*, 564 U.S. at 499. (Emphasis added.)  To determine whether a claim will be "necessarily resolved" under the *Stern* test, "courts generally look to see if a 'common nucleus of law and fact' exists to inextricably intertwine the claims and counterclaims." *Somerset Properties SPE LLC v. LNR Partners, Inc. (In re Somerset Properties SPE, LLC)*, 2012 WL 3877791, at *8 (Bankr. E.D. N.C. 2012); *Tolliver v. Bank of America (In re Tolliver)*, 464 B.R. 720, 736 (Bankr. E.D. Ky. 2012) (explaining that the court in *Stern* "looked not only to the factual overlap of the claim resolution and the counterclaim, but also the legal elements which must be determined to resolve the claim and the counterclaim and the remedies sought by the counterclaim and the impact on the claims allowance process.").

The Trustee asserts that his claims for fraudulent transfer and preference are *necessarily resolvable* as part of the claims process by virtue of § 502(d), which provides as follows:

> (d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

"The mandatory language 'shall' makes it necessary to resolve the issues referred to in the statute unless the party filing the proof of claim either turns over the property or pays for it." *In re Doctors Hospital of Hyde Park, Inc.,* 507 B.R. 558, 589 (Bankr. N.D. Ill.  2013). Enlink, of course, has done neither.

As stated by the Seventh Circuit in *Peterson v. Somers Dublin Ltd.*, 729 F.3d 741, 747 (7th Cir. 2013):

> The current dispute comes within a bankruptcy judge's authority, notwithstanding *Stern*, because all of the defendants submitted proofs of claim as the Funds' creditors and thus subjected themselves to preference-recovery and fraudulent-conveyance claims by the Trustee. See 11 U.S.C. § 502(d). The Supreme Court held in *Katchen v. Landy,* 382 U.S. 323, 329–36, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), and *Langenkamp v. Culp,* 498 U.S. 42, 44–45, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), that Article III authorizes bankruptcy judges to handle avoidance actions against claimants. See also *Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 57–59, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). *Stern* stated that its outcome is consistent with those decisions. 131 S.Ct. at 2616–18. *Wellness International Network* likewise observes (727 F.3d at 774–75) that there is no constitutional problem when a bankruptcy judge adjudicates a trustee's avoidance actions against creditors who have submitted claims. The bankruptcy judge thus acted within her authority....

The Sixth Circuit has similarly held it to be "crystal clear" that bankruptcy judges have constitutional authority to enter final judgments on state law fraudulent transfer claims when the defendant has filed a proof of claim sufficiently related to the fraudulent transfer. *Onkyo Europe Electronics GMBH v. Global Technovations Inc. (In re Global Technovations Inc.),* 694 F.3d 705, 722 (6th Cir.2012).  *Global Technovations* expressly relied upon the fact that the defendant filed a proof of claim against the bankruptcy estate such that the case was "fundamentally unlike *Granfinanciera,* where the bankruptcy estate reached out

14

to file a fraudulent-transfer claim against a party who had filed no claim against the estate." *Id.* The Opinion reasoned that the defendant "brought itself voluntarily into the bankruptcy court." *Id.* Furthermore, the fraudulent transfer claim was a defense to the defendant's proof of claim. *Id.* Therefore, the Opinion reasoned, "'it was not possible ... to rule on [the defendant's] proof of claim without first resolving the fraudulent transfer issue.'" *Id.* (citing *Stern*, 131 S.Ct. at 2616). See also, *In re Bernard L. Madoff Investment Securities LLC,* 740 F.3d 81, 95 (2nd Cir. 2014) (holding that the bankruptcy court had constitutional authority to enter final judgments on the trustee's fraudulent transfer claim because the defendants "filed a proof of claim" and "in order to rule on that claim, the Bankruptcy Court was required to first resolve the fraudulent transfer issue"); *Lehman Brothers Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Brothers Holdings Inc.*), 480 B.R. 179, 192 (S.D. N.Y. 2012) (holding that "if § 502(d) *were* applicable to this action, the bankruptcy court would necessarily need to resolve Plaintiffs' avoidance action prior to ruling on [creditor's] proof of claim.").

In the present case, the very documents which are attached to Enlink's proof of claim (the Loan Agreement and amendments, ORRI Assignment, First Amendment Transfer and Second Transfer) are the same documents upon which the Trustee relies in asserting his avoidance claims and his Objection to Enlink's claim. Count VIII asserts that the Objection of the Trustee to Enlink's claim is specifically based on the avoidance actions referenced in § 502(d). This factual situation falls within the purview of § 502(d), and the Trustee's avoidance actions are necessarily resolvable to the claims process. Accordingly, the Trustee's claims are not subject to any of the constitutional limitations imposed by *Stern*.

### C. Whether Enlink Is Entitled to a Jury Trial

Enlink has demanded a jury trial but will not consent to the Bankruptcy Court conducting it.

Section 157(e) of Title 28 provides:

> If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specifically designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

Bankruptcy Rule 9015 dovetails with 28 U.S.C. § 157(e) and provides that:

> If the right to a jury trial applies, a timely demand has been filed pursuant to Rule 38(b) F.R.Civ.P., and the bankruptcy judge has been specifically designated to conduct the jury trial, the parties may consent to have a jury trial conducted by a bankruptcy judge under 28 U.S.C. § 157(e) by jointly or separately filing a statement of consent within any applicable time limits specified by local rule.

Section 157(e) does not set forth *when* or *if* jury trial rights apply in bankruptcy, nor does it make any distinction regarding which party or parties possess the right to a jury trial – debtor-in-possession or trustee, on the one hand, or the creditor or other non-debtor party, on the other.  Historically and by case law, the Seventh Amendment jury trial right has been limited by the equitable nature of bankruptcy court authority.

The Supreme Court of the United States has issued three opinions as to when a party to a dispute in bankruptcy court has no right to a jury trial.  In *Katchen v. Landy*, 382 U.S. 323, 86 S. Ct. 467 (1966), the Court firmly established the principle that whether non-debtor parties retain their Seventh Amendment jury rights in bankruptcy cases and proceedings, hinges upon whether that non-party has filed a proof of claim in the bankruptcy case such that it submitted to the jurisdiction of the bankruptcy court. *Katchen*

16

stated that "he who invokes the bankruptcy court by offering the proof of claim demanding its allowance must abide the consequences of that procedure." *Id.* at 332 n.9.  In *Granfinanciera, S.A*. v. *Nordberg,* 492 U.S. 33, 109 S.Ct. 2782 (1989), the Court reiterated this principle by holding that  a fraudulent transfer action brought by the trustee entitled the defendant to the right to jury trial if the defendant *had not submitted a proof of claim* in the bankruptcy proceedings.  "Because petitioners here...*have not filed claims against the estate*, respondent's fraudulent conveyance action does not arise 'as part of the process of allowance and disallowance of claims.' Nor is that action integral to the restructuring of debtor-creditor relations.  Congress therefore cannot divest petitioners of their Seventh Amendment right to a trial by jury.  *Katchen* thus supports the result we reach here today; it certainly does not compel its opposite." *Id.* at 58-59. (Emphasis added).  Soon thereafter, the Court in *Langenkamp v. Cole*, 498 U.S. 42, 111 S. Ct. 330 (1990), citing both *Katchen* and *Granfinanciera*, held that:

> ...by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power.  If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity.  In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equity jurisdiction*.  As such, there is no Seventh Amendment right to a jury trial.

*Id.* at 44-45 (internal citations omitted).  See, *Peterson v. Somers Dublin Ltd.*, 729 F.3d 741, 747 (7th Cir. 2013) (where defendants submitted proofs of claims, they subjected themselves to preference and fraudulent conveyance claims by the trustee (citing to § 502(d), and under *Katchen* and *Langenkamp*, Article III authorizes bankruptcy judges to

resolve such avoidance actions); *The Cadle Co. v. Moore*, 739 F.3d 724, 728 (5th Cir. 2014) (holding that the bankruptcy court had authority to enter a final order on fraudulent transfer claims where defendant *had* also filed proof of claim, and resting on the fact that fraudulent transfer claims are premised in the Bankruptcy Code under §§ 544 and 548). *Katchen*, *Granfinanciera*, *Langenkamp* and their progeny, taken together, indicate that a creditor or a party-in-interest who voluntarily files a claim against the bankruptcy estate thereby loses the Seventh Amendment right to a jury trial if the trustee subsequently objects to the claim or seeks some other affirmative relief relating to the claim.

The decision in *Stern* does not alter the *Katchen* line of cases but does clarify exactly when the creditor's filing of a proof of claim transforms legal claims into equitable ones.  Specifically, the majority in *Stern* explained that the results in *Katchen* and *Langenkamp* were appropriate because "the action[s] at issue stem[med] from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern*, 564 U.S. at 499.

In arguing that the filing of a proof of claim does not waive jury trial rights, Enlink places primary reliance upon *Mirant Corp. v. The Southern Corp*., 337 B.R. 107 (N.D. Tex. 2006).  There, defendant sought withdrawal of reference based upon its right to a jury trial on fraudulent conveyance claims made by the debtor and the creditor's committee.  The bankruptcy court found the defendant had filed proofs of claim in the underlying bankruptcy case and had therefore waived its right to jury trial as to the fraudulent conveyance claims. The district court reversed, finding that despite the filing of the proofs of claims the defendants did not waive jury trial rights as to the fraudulent conveyance claims. *Id*. 337 B.R. at 121.

18

This Court agrees with Enlink and the District Court in *Mirant* that waiver of the right to jury trial must be "knowingly, voluntarily and intelligently made," and that the court should be bound to "indulge in a presumption against waiver of the Seventh amendment right to jury trial." *Mirant*, 337 B.R. at 121 (citing *Aetna Insurance Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809 (1937)).  That being said, in this Court's opinion there is no basis for the argument "advanced in *Mirant,* that: (1) courts must indulge in a presumption against waiver of the Seventh Amendment right to a jury trial above and beyond any presumptions already accounted for in *Katchen*, *Grandfananciera* and *Langenkamp* themselves; or (2) a non-bankrupt defendant who has already filed a proof of claim must, in addition to filing this claim, take other steps to 'knowingly, voluntarily and intelligently' waive his right to a jury trial in order to actually effect a waiver of his right to jury trial." *In re Endeavor Highrise L.P.*, 425 B.R. 402, 408 n.3 (Bankr. S.D. Tex. 2010) (finding jury trial rights extinguished where non-creditor purchaser of fraudulent transfer filed counter-claim against trustee). It is simply black-letter law from the Supreme Court that the filing of a proof of claim submits the filing party to the jurisdiction of the court and waives the right to jury where either a fraudulent conveyance or preference avoidance action becomes necessarily involved in the claims resolution process.

*Mirant* also based its finding that the defendant was entitled to a jury trial on the fact that the claim asserted against the defendant was one based on the fraudulent conveyance, distinguishing it from the preference claim in *Langenkamp.*  This Court disagrees with that assessment.  Most courts do not recognize the distinction between fraudulent transfer claims and preferential transfer claims determining the right to trial by jury where a proof of claim is filed.  The Supreme Court did not make such a distinction

19

between fraudulent transfer actions and preference actions. *Grandfinanciera* dealt with an alleged fraudulent transfer, while *Langenkamp* dealt with an alleged preferential transfer. Furthermore, § 502(d) deals with both preferential transfer and fraudulent conveyance actions. Many courts apply *Langenkamp* in the context of fraudulent transfer claims. For those reasons, the Court agrees with the criticism of*,* and makes the decision not to follow*, Mirant.* See, *U.S. Bank National Association v. Verizon Communications Inc.*, 2012 WL 987539, at *3-4 (N.D. Tex. 2012); *In re Endeavor Highrise L.P.*, Supra.

As this Court has stated in this Opinion, § 502(d) makes it clear with regard to both fraudulent conveyances or preference claims that such actions are "integral to the restructuring of the debtor-creditor relationship" and "part of the claims-allowance process which is triable only in equity." See *Langenkamp*, 498 U.S. at 44-45. The Court does not agree with Enlink's assertion that its proof of claim "is immaterial to the claims allowance process or the debtor-creditor relationship; that "even if the Litigation Trust is successful on its fraudulent conveyance claims, Enlink will still have its proofs of claim;" or that "the fraudulent conveyance claims do not directly affect the claims allowance process or debtor-creditor relationship." [Adv. Doc. 26, pg. 7]. Its proof of claim is inextricably tied to the Trustee's action. The Court finds that having filed a proof of claim, Enlink has submitted to the Constitutional jurisdiction of the bankruptcy court and is not entitled to a trial by jury.

### D. Legal Standards for Withdrawal of the Reference to the Bankruptcy Court

Congress did not intend that the district courts themselves would preside over and resolve most bankruptcy cases and proceedings. Congress provided in 28 U.S.C. § 157(a) that each district court would provide that any and all cases and any and all proceedings

arising in, under, or related to the case be "referred" to the bankruptcy judge for the district. The exception is "personal injury tort and wrongful death claims" which must be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in the which the bankruptcy case is pending. 28 U.S.C. § 157(b)(5). Section 157(d) of Title 28 provides that the district court may withdraw the reference of any case or proceeding, in whole or in part, that has been previously referred.

The district court must withdraw the reference on a mandatory basis in any proceeding if the court determines that "resolution of the proceeding requires consideration of both title 11 and the laws of the United States regulating organizations or activities affecting interstate commerce" ("mandatory withdrawal"). Mandatory withdrawal is not applicable here.

Section 157(d) of Title 28 also provides that a court may withdraw the reference "for cause shown," that is "discretionary" or "permissive" withdrawal. The term "for cause" is not defined, and courts have been left to decide a case-by-case basis whether cause exists. The seminal case in determining whether "cause" exists is *Holland America Ins. Co. v. Roy*, 777 F.2d 992 (5th Cir. 1985) which held that in determining whether a movant has shown "cause" under § 157(a), the district court should consider the following issues:

1. whether the underlying lawsuit is a core or non-core proceeding;

2. whether promotion of uniformity of bankruptcy administration will be achieved;

3. whether forum shopping and confusion will be reduced;

4. whether there will be economical use of debtors' and creditors' resources;

5. whether the withdrawal of the reference will expedite the bankruptcy process; and

21

6. whether a party has demanded a jury trial.

*Id*. at 999 (the "*Holland* factors"); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2nd Cir. 1993) (the "*Orion* factors")*; In re Royce Holmes, LP,* 578 B.R. 748, 756 (Bankr. S.D. Tex. 2017); *Sansom Resources Co. v. Valero Marketing and Supply Co.,* 449 B.R. 120, 132 (D. N.M. 2011)*; Guffy v. Brown (In re Brown Medical Center, Inc.),* 578 B.R. 590, 595 ((Bankr. S.D. Tex. 2016).[12]  Permissive withdrawal of the reference is not favored. *Grochocinski v. LaSalle Bank NA, (In re K & R Express Systems, Inc.),*382 B.R.443, 446 (N.D. Ill. 2007) ("permissive withdrawal is the exception"); *In re UD Dissolution Corporation*, 2016 WL 2903224, at *2 (D. Utah 2016).

    While in determining whether withdrawal of the reference is appropriate the Court must review the *Holland/Orion* factors applicable to the case; however, it must be noted that following *Stern* courts have taken different approaches in adapting those factors. Some courts modify the first prong of *Holland/Orion (*whether a proceeding is core or non-core) and considered whether the bankruptcy court has constitutional authority to finally adjudicate the matter. *In re Lehman Brothers Holdings Inc.*, 532 B.R. 203, 210 (S.D. N.Y. 2015); *In re Connie's Trading Corp.*, 2014 WL 1813751, at *7 (S.D. N.Y. 2014) (explaining that in resolving the motion for permissive withdrawal, the court would first address whether the bankruptcy court has final adjudicative authority over the adversary proceeding under *Stern* before discussing the relevant factors); *In re Lyondell Chemical Co.*, 467 B.R. 712,

---

[12] In opposing Enlink's Motion for Withdrawal of the Reference, the Trustee does not address all of the *Holland* factors. The Trustee argues that the only relevant factors are (1) the assertion by Enlink that the Bankruptcy Court lacks constitutional authority to enter final judgment on certain claims in the case and (2) that withdrawal would not foster more economical use of parties resources or judicial efficiency.

719 (S.D. N.Y. 2012) ("To the extent the core/non-core distinction held a privileged position among the *Orion* factors before *Stern*, this is no longer the case."); *Adelphia Recovery Trust v. FLP Group, Inc.,* 2012 WL 264180, at *3 (S.D. N. Y. 2012) ("After *Stern*, a court's consideration of a motion to withdraw reference to bankruptcy court should–in addition to the *Orion* factors–include consideration of: whether the claims at issue involve a public or private right; whether the claims will be resolved in ruling on a creditor's proof of claim, if any; and whether the parties consent to final adjudication by a non–Article III tribunal."). This Court agrees that its constitutional authority to enter a final order should be dealt with first and foremost when considering the factors determinative of withdrawal the reference.

### 1. The Bankruptcy Court's Final Adjudicative Authority - Whether the Trustee's Action is a  Constitutionally Core or Non-Core "*Stern* Claim"

 The Trustee's bankruptcy-based claims asserted herein, to recover preferences and to recover fraudulent conveyances, are clearly among those specifically statutorily denominated as "core." 28 U.S.C. § 157(b)(2)(F) and (H), respectively.  As discussed above, *Stern* held, however, the statutory authority to hear a case is a separate issue from the bankruptcy court's constitutional power.  If a proceeding is core under the statute but the court lacks judicial power under the Constitution to enter a final order, it is a non-core proceeding.  E.g., *In re USDigital, Inc.*. 461 B.R. 276, 279 (Bankr. D. Del. 2012).  This Court has found that the Trustee's claims of fraudulent transfer and preference are *both* statutorily and constitutionally "core" claims over which this Court has jurisdiction. Accordingly, these non-*Stern* core claims are a factor militating against withdrawal of the reference.

**2**. **Right to Jury Trial**

The Court recognizes the compelling factor for consideration of withdrawal of the reference is whether the party seeking withdrawal of reference has a right to jury trial and has not consented to jury trial in the Bankruptcy Court.  This Court does not take lightly a party's Seventh Amendment rights.  However, as discussed above, having submitted to the equitable jurisdiction of the Bankruptcy Court by filing its proof of claim, Enlink does not have a right to a jury trial.  This factor militates against withdrawal of the reference.

**3. Whether Promotion of Uniformity of Bankruptcy Administration Will Be  Achieved**

"If a bankruptcy court is already familiar with the facts of the underlying action, then allowing that court to adjudicate the proceeding will promote uniformity in the bankruptcy administration." *In re Brown Medical Center, Inc.*, 578 B.R. at 597.  Having presided over the underlying White Star bankruptcy from the inception of the involuntary petition through confirmation of the Chapter 11 Plan and resolution of hundreds of claims, the Court is familiar with the nature of the Debtor's business and, in particular, the resolution of lien rights asserted by numerous creditors in adversary proceedings.  None of those adversary proceedings and/or objections to claims proceedings, however, were based upon fraudulent or preferential transfers as is the present case.  The present case differs from the situation in *Brown Medical Center, Inc*. where the Bankruptcy Court, although recommending withdrawal of the reference, recommended that the District Court refer it back for adjudication of all pre-trial matters.  There the Court noted that the Plan Agent of the corporate bankruptcy had filed twenty-two adversary proceedings to recover fraudulent conveyances, and the trustee in the debtor's principal's individual bankruptcy had filed ten

24

fraudulent conveyance adversaries.  Under such a situation, the "judge has therefore already spent considerable time becoming familiar with all the detail and background... of transfers to various sundry individuals and corporations." *Brown*, 578 B.R. at 598.  This court has no such background in the present adversary.  This is not a situation where a motion to withdraw the reference should be denied because this adversary has raised essentially the same issues as those pending upon claims objection proceedings. See e.g., *In re Velocita Corp.*, 169 Fed.Appx. 712 (3rd Cir. 2006).  The Court does not believe that withdrawal of the reference requires "a separate tribunal unfamiliar with the parties and issues to get up the learning curve..." [Adv. Doc. 25, pg. 8].

Furthermore, withdrawal of the reference would not interfere with bankruptcy administration where the Plan of Reorganization has been confirmed and is not contingent upon the resolution of this adversary. See, *In re OCA, Inc.*, 410 B.R. 443, 453 (E.D. La. 2007).  In fact, on October 21, 2021, the Court granted the *Plan Administrator's Chapter 11 Final Report and Motion for Entry of Final Decree* and entered the *Final Decree* closing the White Star bankruptcy cases. [Doc. 1618].  Under the circumstances, this factor works in favor of withdrawal of the reference.

### 4. Whether Forum Shopping and Confusion Will Be Reduced

The Court does not believe that in the present case that "forum shopping" is a factor determining whether or not withdrawal of the reference is appropriate.  It is true, as discussed above, that by filing its proof of claim Enlink submitted to the jurisdiction of the bankruptcy court, but that was the appropriate, and only, means by which to share in the debtor estate.  That is not "forum shopping" which occurs when a party chooses a forum it considers to be more favorable 'without *any* legal or factual basis for doing so'". *Biofire*

*Defense, LLC v. Fluidigm Corporation*, 2019 WL 7037959 (D. Utah 2019) (quoting *Predator International Inc. v. Gamo Outdoor USA, Inc*., 793 F.3d 1177, 1192 (10ᵗʰ Cir. 2015).  The Court does not question that Enlink in good-faith, and timely, made the assertion that jurisdiction of this matter should reside in the District Court.

### 5. Whether There Will Be Economical Use of Debtors' and Creditors' Resources

Given the fact that withdrawal of the reference has been sought very early on in these proceedings prior to any discovery or other pleadings having been filed, the Court does not find that there has been any time wasted or effort expended in the Bankruptcy Court if withdrawal of the reference were recommended.  Both the Bankruptcy Court and the District Court would be essentially starting at the same place, and there would be no duplication of effort.

Enlink's argument that there would be a duplication of effort is based on the assumption that the Bankruptcy Court, lacking constitutional jurisdiction, could only make proposed findings of fact and conclusions of law to the District Court which would have to conduct a *de novo* review.  The problem with Enlink's argument/assumption is that this Court has found herein that it *does* have constitutional jurisdiction to enter a final order on the fraudulent and preferential transfer claims.

Enlink is correct that withdrawal of the reference would be economical by eliminating the expense of intermediate appeal (to the District Court or to the BAP) in the event that either Enlink or the Trustee would appeal the final decision of this Court.  That argument could be made as to any matter pending before the bankruptcy court in which an appeal might be anticipated.  The Court cannot abdicate its responsibility to hear cases over which

it has both statutory and constitutional jurisdiction solely to help the parties save expense by circumventing the normal appeal process.

The Court finds that this factor is essentially neutral, but does not militate in favor of withdrawal of the reference.

## V. Conclusion

For the foregoing reasons, the Court finds that the Trustee's claims are integral to and necessary for the resolution of Enlink's proof of claim which it has filed in the case, and therefore holds that *Stern* does not preclude this Court from hearing and entering a final judgment or order in this adversary proceeding. The Court further finds that by filing of a proof of claim, Enlink has waived its right to a trial by jury. Consideration of other *Holland* factors are not of such import as to justify this Court making a recommendation to the District Court for withdrawal of the reference. The Court therefore recommends that the reference not be withdrawn. Accordingly,

**IT IS ORDERED** that the Clerk of this Court transmit a copy of this Order, together with a copy of the record in this adversary proceeding to the Clerk of the United States District Court for the Western District of Oklahoma, so that the District Court may consider the Defendant's *Motion to Withdraw Reference and Demand for Jury Trial* [Adv. Doc. 24].

**IT IS FURTHER ORDERED** that this adversary proceeding shall proceed before this Court unless and until the United States District Court for the Western District of Oklahoma enters an order withdrawing the reference of this adversary proceeding.

# # #

27